UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DARRYL HARRELL                                                          CIVIL ACTION

VERSUS                                                                  NO. 15-401

MARLIN GUSMAN, ET AL.                                                   SECTION "G"(3)

REPORT AND RECOMMENDATION

      Plaintiff, Darryl Harrell, a state pretrial detainee, filed this civil action pursuant to 42 U.S.C. § 1983. In his original complaint, he sued Sheriff Marlin N. Gusman, Mr. Lopez, Ms. Turner, Ms. Weaver, Bonita Pittman, and Ms. Clayton.[1] In an amended complaint, he added Deputy Garrison, Deputy Black, and Deputy Elder as defendants.[2] In this lawsuit, plaintiff challenges the conditions of his confinement within the Orleans Parish Prison system.

      To better understand the factual bases of plaintiff's claims, the Court held a Spears hearing on April 1, 2015. See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of

---

[1] Rec. Doc. 4.

[2] Rec. Doc. 17. The amended complaint also referenced Deputy Turner and Deputy Clayton. However, at the Spears hearing subsequently held in this case, plaintiff stated that those two defendants are the same as the "Ms. Turner" and "Ms. Clayton" named in the original complaint.

a Fed. R. Civ. P. 12(e) motion for more definite statement. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996). Spears hearing testimony becomes a part of the total filing by the *pro se* applicant. Id.

At that Spears hearing, the Court also ordered defense counsel to submit certified copies of plaintiff's medical and grievance records. Those records have been produced and filed into this federal record,[3] and copies have been provided to plaintiff for his use in this proceeding.

Shortly after the Spears hearing was held, the Court received a motion in which plaintiff appeared to request that some or all of his claims be voluntarily dismissed.[4] Because the motion was inconsistent with plaintiff's wishes as stated at the hearing, the Court issued an order directing plaintiff to clarify whether he did in fact wish to seek a voluntary dismissal.[5] Plaintiff subsequently notified the Court that he wished to proceed with this lawsuit.[6] In light of that notification, the undersigned recommends that the motion for voluntary dismissal be denied. However, for the following reasons, the undersigned also recommends that plaintiff's complaint nevertheless be dismissed as frivolous and/or for failing to state a claim on which relief may be granted pursuant to the Court's screening authority.[7]

---

[3] Rec. Doc. 30.

[4] Rec. Doc. 23.

[5] Rec. Doc. 24.

[6] Rec. Doc. 28.

[7] The Court notes that plaintiff recently filed a motion for summary judgment. Rec. Doc. 29. However, because plaintiff's complaint should be dismissed as frivolous and/or for failing to state a claim on which relief may be granted, he obviously is not entitled to summary judgment in his favor. Accordingly, it is also recommended that plaintiff's motion for summary judgment be denied.

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).[8] Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> > (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
>
> > (i) is frivolous or malicious;
> > (ii) fails to state a claim on which relief may be granted; or
> > (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the

---

[8] "[T]he term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

3

Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted).  The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

As noted, in this lawsuit, plaintiff challenges the conditions of his confinement within the Orleans Parish Prison system.  Broadly construing plaintiff's complaint, as amended,[9] and fully considering his Spears hearing testimony, the undersigned finds that plaintiff is asserting the following claims in this lawsuit:

---

[9]  The court must liberally construe a *pro se* civil rights complaint.  See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

1. The jail is unclean, with mold, rust, and dusty air vents. At the Spears hearing, he acknowledged that inmates are given cleaning supplies approximately twice per week but he stated the amounts provided are insufficient.

2. Plaintiff was initially provided with only one "jumper" when he entered the prison.

3. There is inadequate security at the jail, with deputies often leaving their posts.

4. Plaintiff has been provided with inadequate medical care for asthma and other ailments.

It is clear that "the Fourteenth Amendment prohibits the imposition of conditions of confinement on pretrial detainees that constitute punishment." Collins v. Ainsworth, 382 F.3d 529, 540 (5th Cir. 2004) (internal quotation marks omitted). Nevertheless, the jurisprudence recognizes that the judiciary is ill equipped to micro-manage a jail's day-to-day operations, and federal courts are therefore loath to intervene when detainees complain of mere inconveniences. Further, such judicial restraint is appropriate because the federal constitution simply is not concerned with a *de minimis* level of imposition on pretrial detainees. Bell v. Wolfish, 441 U.S. 520, 539 n.21 (1979); Ruiz v. El Paso Processing Center, 299 Fed. App'x 369, 371 (5th Cir. 2008). As explained below, it is apparent that plaintiff's numerous complaints regarding the conditions of his confinement concerned inconveniences which did not constitute "punishment" or otherwise rise to the level of constitutional violations.

For example, as noted, plaintiff complains that the jail is unclean. Obviously, there is a point beyond which a prison's conditions are so unsanitary as to render them unconstitutional. See, e.g., Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004) (confinement in "'extremely filthy' [cells] with

crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls" was unconstitutional).  That said, it must be remembered that, although prisons should be reasonably clean, "[t]he Constitution does not require that prisons be completely sanitized or as clean or free from potential hazards as one's home might be."  McAllister v. Strain, Civ. Action No. 09-2823, 2009 WL 5178316, at *3 (E.D. La. Dec. 23, 2009); accord Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) ("[T]he Constitution does not mandate prisons with comfortable surroundings or commodious conditions.").  While the conditions described by plaintiff may be unpleasant, they are not so egregious as to be unconstitutional.

The same is true concerning plaintiff's complaints of mold and rust.  The jurisprudence has repeatedly held that the mere fact that mold is present in a jail does not render an inmate's confinement unconstitutional.  See, e.g., Eaton v. Magee, Civ. Action No. 2:10-cv-112, 2012 WL 2459398, at *5 (S.D. Miss. June 27, 2012) ("Plaintiff's claim that the bathroom and shower area are unsanitary and contain black mold fails to rise to the level of a constitutional violation."); Barnett v. Shaw, No. 3:11-CV-0399, 2011 WL 2200610, at *2 (N.D. Tex. May 18, 2011) (allegation of "excessive amount of black mold in the showers and sinks" was insufficient to raise a claim for constitutional violation), adopted, 2011 WL 2214383 (N.D. Tex. June 7, 2011); Reynolds v. Newcomer, Civ. Action No. 09-1077, 2010 WL 234896, at *10 (W.D. La. Jan. 19, 2010) (plaintiff's complaints of "the presence of black mold in living areas, eating areas, and shower areas" were found to "rise to no more than a *de minimis* level of imposition with which the Constitution is not concerned" (quotation marks omitted)); McCarty v. McGee, No. 2:06cv113, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008) ("Plaintiff's claim that the shower he was forced to share with other

inmates is polluted and covered in mold and fungus, causing him to catch athlete's foot and ringworm, fails to rise to the level of a constitutional violation."). Similarly, the presence of rust in a jail does not rise to the level of a constitutional violation or otherwise warrant relief in a federal civil rights action. See, e.g., Maddox v. Gusman, Civ. Action No. 14-2435, 2015 WL 1274081, at *3 (E.D. La. Mar. 19, 2015); Simmons v. Gusman, Civ. Action No. 14-1907, 2015 WL 151113, at *4 (E.D. La. Jan. 12, 2015); Penn v. Jones, Civ. Action No. 13-0830, 2014 WL 31351, at *2 (W.D. La. Jan. 2, 2014).

Dusty air vents likewise to not rise to the level of a constitutional violation. See, e.g., Ross v. Valdez, No. 3:12-CV-5221, 2013 WL 3242682, at *2-3 (N.D. Tex. June 27, 2013); Maize v. Monfra, Civ. Action No. 12-2619, 2013 WL 2154034, at *3 and *12-15 (E.D. La. Apr. 23, 2013); Marshall v. Allison, Civ. Action No. 1:08CV1387, 2011 WL 601178, at *3-4 (S.D. Miss. Feb. 11, 2011); Samiia v. Allison, Civ. Action No. 1:09cv197, 2010 WL 4225887, at *5-7 (S.D. Miss. Sept. 2, 2010), adopted, 2010 WL 4255915 (S.D. Miss. Oct. 20, 2012); LeBlanc v. Gusman, Civ. Action No. 09-2786, 2010 WL 148290, at *3 (E.D. La. Jan. 12, 2010).

Plaintiff's next claim is that he was not provided adequate clothing, noting that he was initially given only one "jumper" when he entered the jail. Obviously, "prison officials must ensure that inmates receive adequate ... clothing." Farmer v. Brennan, 511 U.S. 825, 832 (1994). Here, however, plaintiff's allegations are insufficient to state a nonfrivolous claim, in that there is no indication that he was denied additional clothing as a means of punishment. On the contrary, he does not even allege a punitive motivation and the responses to his grievances indicate that

7

additional clothing was not provided because it was simply unavailable.[10] Plaintiff's claim is therefore not actionable, especially in that he has not alleged that the lack of additional clothing resulted in "an injury in fact that affect[ed] him in a personal and individual way or one that [was] imminent." See Shareef v. Alford, Civ. Action No. 1:09CV86, 2011 WL 3104582, at *1 (E.D. Tex. May 25, 2011), adopted, 2011 WL 3104772 (E.D. Tex. July 25, 2011).

Plaintiff's claim challenging the adequacy of the security at the jail likewise fails. To the extent that he is contending that jail officials are negligent for failing to provide better security, that claim is not cognizable in this federal proceeding. See Eason v. Thaler, 73 F.3d 1322, 1329 n.3 (5th Cir. 1996) ("[N]egligence is not a theory for which liability may be imposed under section 1983."); see also Baker v. McCollan, 443 U.S. 137, 146 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law."); Nesmith v. Taylor, 715 F.2d 194, 195 (5th Cir. 1983) ("It is fundamental to our federal jurisprudence that state law tort claims are not actionable under federal law; a plaintiff under section 1983 must show deprivation of a federal right.").

To the extent that he is attempting to assert a federal constitutional claim challenging the security, it would be a failure-to-protect claim. See, e.g., Lee v. King, Civ. Action No. 1:13cv566, 2014 WL 7184045 (S.D. Miss. Dec. 16, 2014); Scott v. Gusman, Civ. Action No. 10-2706, 2011 WL

---

[10] Plaintiff's grievance records, which have been reviewed and filed into this federal record, show that he submitted several requests for additional clothing. For example, on January 9, 2015, he requested a change of clothes and defendant Pittman responded that "another jumper will be issued when we get them." On January 28, 2015, he then again requested another jumper, and Pittman responded: "No extra jumpers. The laundry is available for you to send you[r] jumper to be washed, dried and returned."

666851, at *5 (E.D. La. Feb. 14, 2011); Desdunes v. Gusman, Civ. Action No. 10-3210, 2010 WL 4365809, at *2 (E.D. La. Sept. 30, 2010), adopted, 2010 WL 4362822 (E.D. La. Oct. 21, 2010); Cruz v. Owens, Civ. Action No. 86-5325, 1986 WL 13478 (E.D. Pa. Nov. 26, 1986) (claim that inmate was attacked due to "poor security" analyzed as a failure-to-protect claim).  It is clear that "the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including ... protection from harm, during their confinement."  Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) (en banc).  The United States Fifth Circuit Court of Appeals has held:

> To establish a failure-to-protect claim under § 1983, [a prisoner] must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.  In order to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) (citations and internal quotation marks omitted).

In the instant case, plaintiff does not allege that the purportedly inadequate security has ever placed *him* in harm's way, that *he* personally is particularly susceptible to being attacked, or that prison officials have been made aware of and yet are deliberately indifferent to *his* need for protection.  Instead, he offers nothing more than his vague and conclusory allegation that security is inadequate, and it is clear that such allegations do not suffice to state a federal claim.  See, e.g., Morrison v. Gusman, Civ. Action No. 10-217, 2010 WL 724173, at *6 (E.D. La. Feb. 22, 2010); Sweat v. Corrections Corporation of America, No. 08-CV0917, 2009 WL 774454, at *2 (W.D. La. Mar. 24, 2009).

Lastly, plaintiff's claim that he has received inadequate medical care also fails. As an initial matter, the Court notes plaintiff has not named a proper defendant with respect to a medical claim. There is no suggestion that any of the named defendants played any role in denying plaintiff medical care. Moreover, none of them work in the jail's medical department, and, although Gusman and Pittman hold supervisory positions within the Orleans Parish Prison system, they cannot be held liable pursuant to 42 U.S.C. § 1983 under any theory of strict liability[11] or vicarious liability.[12]

Second, in any event, even if plaintiff had named a proper defendant, his underlying claim has no merit. It is, of course, true that all inmates, regardless of whether they are pretrial detainees or convicted prisoners, have a right to medical care in jail. However, that right is a limited one which is violated only if the inmates' "serious medical needs" are met with "deliberate indifference" on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).

---

[11] Harris v. Greer, 750 F.2d 617, 618 (7th Cir. 1984) ("[T]here is no concept of supervisor strict liability under section 1983."); see also Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996); Evans v. Gusman, Civ. Action No. 08-703, 2008 WL 2223281, at *2 (E.D. La. May 23, 2008); Castillo v. Blanco, Civ. Action No. 07-215, 2007 WL 2264285, at *5 (E.D. La. Aug. 1, 2007).

[12] Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987) ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." ); see also Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or *respondeat superior* liability."); Evans, 2008 WL 2223281, at *2.

Even if plaintiff could establish that he has "serious medical needs,"[13] he cannot show "deliberate indifference." Regarding the "deliberate indifference" necessary to support an actionable medical claim, the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In the instant case, the Court has obtained and reviewed a certified copy of plaintiff's medical records from the jail. Those records document the following medical complaints and care:

12/27/14   A "Medical Intake Screening" was performed, showing that plaintiff reported a injury to his left hand from 2002, a history of asthma (with his last attack occurring four years prior), and a medication history of taking Robaxin and

---

[13] The United States Fifth Circuit Court of Appeals has explained that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

11

|  |  |
|---|---|
|  | using an Albuterol inhaler. An inhaler was prescribed, and he was referred for a pain management evaluation and dental review. |
| 12/28/14 | Plaintiff was prescribed Tylenol for pain. |
| 1/21/15 | Plaintiff was given a chest x-ray which showed "[n]o acute or active pulmonary disease." |
| 1/27/15 | An "Acute Care Visit" was conducted with plaintiff complaining of wrist and lower back pain and asthma. He was prescribed an inhaler to be used as needed. |
| 2/11/15 | An "Acute Care Visit" was conducted which reflected "mild low back pain" and nerve damage to plaintiff's left hand. He was prescribed Tylenol. |
| 2/25/15 | A "Medical History and Physical Assessment" was completed, showing that plaintiff reported a history of nerve damage to his left hand, lower back pain, and limited mobility. |

It is clear that "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995). That is the case here, in that the records clearly show that plaintiff's medical needs were assessed when he entered the facility and that his needs have been monitored and treated thereafter.

Further, it is unclear what additional medical care plaintiff believes was necessary.[14] However, even if he believes that more should have been done for him, that is of no moment. Absent exceptional circumstances, an inmate's disagreement with his medical treatment simply does not constitute deliberate indifference. Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006). And, as already noted, "the question of whether ... additional ... forms of treatment is indicated is a classic example of a matter for medical judgment." Estelle v. Gamble, 429 U.S. 97, 107 (1976). Generally, such matters of professional medical judgment are better left to the expertise of medical personnel rather than to the legal expertise of judges. Federal courts are therefore reluctant to second-guess such medical decisions in federal civil rights actions. Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); Castro v. Louisiana, Civ. Action No. 08-4248, 2008 WL 5169401, at *4 (E.D. La. Dec. 8, 2008) ("[M]edical judgments are not to be lightly second-guessed in a federal civil rights action."). There is no basis to engage in such second-guessing here.

---

[14] Based on an entry in plaintiff's medical records, it appears that there may have been a delay in plaintiff receiving the asthma inhaler he was initially prescribed upon entering the facility. If that is plaintiff's complaint, it is insufficient to warrant relief. It is clear that mere delay in receiving medical treatment is insufficient to create § 1983 liability unless substantial harm resulted. Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993); Bennett v. Louisiana *ex rel.* Department of Public Safety and Corrections, No. 07-31189, 2009 WL 102080, at *4 (5th Cir. Jan. 15, 2009); Davis v. Kuykendall, 242 Fed. App'x 961, 962-63 (5th Cir. 2007). At the Spears hearing, plaintiff acknowledged that he has now been provided with the inhaler, and he has not alleged that substantial harm resulted from the delay.

The foregoing conclusion also is not changed by the fact that plaintiff's medical care "may not have been the best money could buy." Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); accord Gobert, 463 F.3d at 349 ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978). In fact, the federal constitution does not require even that an inmate's medical care be free from negligence or medical malpractice. Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004). Rather, claims of negligence or medical malpractice present issues of *state* law for *state* courts, not federal constitutional issues for a federal court. See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Coleman v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 13-4325, 2013 WL 6004051, at *4 (E.D. La. Nov. 13, 2013).

In summary, the determinative issue before the Court is not whether the medical treatment plaintiff received was subpar in some respect, whether his medical problems persisted despite treatment, or whether he was dissatisfied with his care; rather, it is only whether prison officials were deliberately indifferent to his serious medical needs. They simply were not.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that plaintiff's motion to voluntarily dismiss this action, Rec. Doc. 23, be **DENIED**, in that plaintiff has notified the Court that he no longer seeks a voluntary dismissal.

It is **FURTHER RECOMMENDED** that plaintiff's motion for summary judgment, Rec. Doc. 29, be **DENIED**.

It is **FURTHER RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) as frivolous and/or for failing to state a claim on which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[15]

New Orleans, Louisiana, this twelfth day of May, 2015.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[15] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.